IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>vs.<br><br>STABL INC., LANT, INC., LEON JOHNSON, and ANN JOHNSON,<br><br>        Defendants. | **8:16CV233**<br><br>**ORDER** |
| STATE OF NEBRASKA,<br><br>        Plaintiff,<br><br>vs.<br><br>STABL, INC., LANT, INC., LEON JOHNSON, and ANN JOHNSON,<br><br>       Defendants. | **8:16CV351**<br><br>**ORDER** |

This matter comes before the Court on the State of Nebraska's Motion to Quash and Motion for Protective Order (Filing No. 88 in the Lead Case; Filing No. 96 in the Member Case), the United States' Motion to Quash and for Protective Order (Filing No. 89 in the Lead Case; Filing No. 97 in the Member Case), and the United States' Motion to Strike Affirmative Defenses (Filing No. 98 in the Lead Case; Filing No. 104 in the Member Case).[1]  Both government entities request a protective order barring any Rule 30(b)(6) deposition of current and former attorneys of the United States, EPA, the State of Nebraska, and Nebraska Department of Environmental Quality ("NDEQ").  The United States separately moves to strike eight of the Defendants' affirmative defenses as legally insufficient, factually irrelevant, and prejudicial.  The Court will grant the motions, in part.

---

[1] Unless otherwise indicated, all further citations to the court record will be to the Lead Case, 8:16CV233.

## BACKGROUND

As outlined by the Court's previous orders, the United States and Nebraska filed the instant actions to recover their respective portions of a more than $2 million judgment awarded against Stabl Inc. ("Stabl") in a prior action as civil penalties for violations of the Clean Water Act. See *United States of America and State of Nebraska v. Stabl, Inc. f/k/a Nebraska By-Products, Inc.*, Case No. 8:11CV274 (Judgment affirmed by 8th Circuit Mandate issued October 21, 2015). The United States and Nebraska both allege that in July 2010, five days after Stabl received notice of the potential civil enforcement action, Stabl fraudulently transferred nearly all its assets to Leon and Ann Johnson to avoid paying penalties, and that Lant, Inc. is an alter ego of the Johnsons. (Filing No. 47).

**The United States' Action**

The United States filed its Complaint on May 26, 2016, (Filing No. 1), and an Amended Complaint on June 6, 2017 (Filing No. 47). The United States' Amended Complaint alleges three claims for fraudulent transfers under the Federal Debt Collection Practices Act ("FDCPA")[2] and one claim entitled "Piercing Stabl's Corporate Veil," which claim Defendants sought to dismiss as time-barred by a four-year statute of limitations. Chief Judge Smith Camp denied the motion to dismiss because piercing a corporate veil is simply a "remedy to enforce a substantive right," rather than an independent cause of action. Accordingly, Chief Judge Smith Camp concluded that the FDCPA's six-year statute of limitations applies to all the United States' claims, and that all the claims were timely. (Filing No. 69 at p. 8).

Defendants thereafter filed an answer raising the following affirmative defenses to the United States' claims: (1) waiver, (2) estoppel, (3) statute of limitations, (4) failure to state a claim, (5) unclean hands and failure to act in good faith and fair dealing, (6) the Defendants did not act in bad faith, (7) presumption that corporations are separate from shareholders and officers, (8) there was no improper unity of interest and ownership, (9) unclean hands, and (10) reliance on counsel and professional accountants. (Filing No. 71 at pp. 16-19).

---

[2] 28 U.S.C. §§ 3001-3308

**The State's Action**

The State of Nebraska filed its Complaint on July 15, 2016, (Filing No. 1 in the Member Case), and an Amended Complaint on August 19, 2016 (Filing No. 15 in the Member Case). The State's Amended Complaint states one claim for fraudulent transfers under the Nebraska Uniform Fraudulent Transfer Act ("NUFTA").[3] The State alleges in its Amended Complaint that it discovered the July 2010 transfers on May 26, 2016, when the United States filed its action in this Court. (*Id.* at p. 6 ¶ 36).

Defendants moved to dismiss the State's action arguing, in part, that the State did not bring the action prior to the running of NUFTA's four-year statute of limitations or within one year after the transfer or obligation was or could reasonably have been discovered. The Court denied Defendants' motion because on a review of a motion to dismiss, the Court assumes as true those facts asserted in a complaint, including the State's allegation that "it filed the action within one year after the [allegedly fraudulent] transfers could reasonably have been discovered." However, the Court's denial was "without prejudice to reassertion in a motion for summary judgment." (Filing No. 35 at p. 8 in the Member Case). Thereafter, Defendants filed an answer raising the following affirmative defenses: (1) waiver, (2) estoppel, (3) statute of limitations, (4) failure to state a claim, and (5) unclean hands and failure to act in good faith and fair dealing. (Filing No. 45 in the Member Case).

The instant dispute concerns Defendants' Rule 30(b)(6) Notices sent to the United States and the State. Both the United States and the State object to producing any 30(b)(6) deposition witness for a variety of reasons, which the Court will discuss further below. Relatedly, the United States has moved to strike several of the defendants' affirmative defenses to prevent the Defendants from seeking discovery related to those defenses.

## ANALYSIS

### I. United States' Motion to Strike

The United States has moved to strike the Defendants' first, second, third, and fifth through ninth affirmative defenses. The United States argues that such defenses are legally

---

[3] Neb. Rev. Stat. §§ 36-701 to 36-712.

insufficient and factually irrelevant, and that striking the defenses is necessary to avoid prejudice because Defendants are seeking discovery related to those defenses. (Filing No. 99 at p. 1).

Under Federal Rule of Civil Procedure 12(f) "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Although courts have "liberal discretion" to strike pleadings under Rule 12(f), "[s]triking a party's pleading . . . is an extreme and disfavored measure." *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007). An affirmative defense may be stricken "where the defense has no basis in law, is insufficient as a matter of law, and the moving party will suffer prejudice in the absence of the court granting its motion to strike." *GGA-PC v. Performance Eng'g, Inc.*, No. 8:16CV567, 2017 WL 2773532, at *2 (D. Neb. June 26, 2017)(Bataillon, J.)(citing *United States v. Dico, Inc.*, 266 F.3d 864, 880 (8th Cir. 2001); see *Lunsford v. United States*, 570 F.2d 221, 229 (8th Cir. 1977). Prejudice may be shown if striking the defense would "prevent a party from engaging in burdensome discovery" or "from expending time and resources litigating irrelevant issues that will not affect the case's outcome." *Cynergy Ergonomics, Inc. v. Ergonomic Partners, Inc.,* No. 4:08-CV-243 JCH, 2008 WL 2817106, at *2 (E.D. Mo. July 21, 2008)(citing *Canadian St. Regis Band of Mohawk Indians ex rel. Francis v. New York*, 278 F. Supp. 2d 313, 325 (S.D.N.Y. 2003)).

The United States seeks to strike Defendants' sixth, seventh, and eighth affirmative defenses because they were raised without sufficient explanation of their factual basis. Fed. R. Civ. P. 8(b) provides, "In responding to a pleading, a party must . . . state in short and plain terms its defenses to each claim asserted against it." Fed. R. Civ. P. 8(b). Defenses "need not be articulated with any rigorous degree of specificity, and may be sufficiently raised for purposes of Rule 8 by their bare assertion." *Infogroup, Inc. v. DatabaseLLC*, 95 F. Supp. 3d 1170, 1193 (D. Neb. 2015)(Gerrard, J.)(citing *Zotos v. Lindbergh Sch. Dist.*, 121 F.3d 356, 361 (8th Cir. 1997)).

Applying the foregoing standards, the Court concludes that Defendants have adequately pled their sixth through eighth affirmative defenses pursuant to Fed. R. Civ. P. 8(b) and have provided the United States with fair notice of those defenses. Striking affirmative defenses is a disfavored measure. "Motions to strike are often considered time wasters, and should be denied unless the challenged allegations have no possible relation or logical connection to the subject

matter of the controversy." *Infogroup, Inc.*, 95 F. Supp.3d at 1194. While several of Defendants' affirmative defenses do not state much in the way of supporting facts, defenses are sufficiently raised under Rule 8 by "bare assertion." Accordingly, these defenses will not be stricken.

The United States further argues that Defendants' first, second, fifth, and ninth defenses (the equitable defenses of waiver, estoppel, and unclean hands) are not or should not be legally available because this action was brought by the United States to collect a court judgment awarded in a prior enforcement action under the Clean Water Act, which was an action by the United States to protect the public interest. The United States "is subject to general principles of equity when seeking an equitable remedy," *United States v. Wilson*, 707 F.2d 304, 312 (8th Cir. 1982); however, equitable principles "will not be applied to frustrate the purpose of its laws or to thwart public policy." *Pan-Am. Petroleum & Transp. Co. v. United States*, 273 U.S. 456, 506 (1927). "Whether an equitable defense is available to a party is a question addressed to the discretion of the trial court." *United States v. Nebraska Beef, Ltd.*, No. 8:15CV370, 2016 WL 6088267, at *4 (D. Neb. May 6, 2016)(Bataillon, J.)(citing *United States v. Sutton*, 795 F.2d 1040, 1062 (Temp. Emer. Ct. App. 1986)).

"Courts are divided on the issue of whether a party may assert the affirmative defense of unclean hands against the government in an enforcement action pursuant to the public interest, with some holding that a litigant can never invoke an unclean hands defense against the government in an enforcement action and some denying motions to strike an unclean hands defense and allowing the factual record to develop." *Nebraska Beef, Ltd.*, No. 8:15CV370, 2016 WL 6088267, at *4 (collecting cases). With respect to estoppel, the Supreme Court and Eighth Circuit "have warned that courts should be cautious when evaluating estoppel claims against the government." *Bartlett v. U.S. Dep't of Agric.*, 716 F.3d 464, 475 (8th Cir. 2013)(citation omitted). "At the same time, however, neither 'the Supreme Court [n]or this court [has] accepted the position . . . that the government may not be estopped as a matter of law." *Id.* (quoting *Wang v. Att'y Gen.*, 823 F.2d 1273, 1276 (8th Cir. 1987)).

The United States' arguments with respect to Defendants' equitable affirmative defenses are persuasive. Based on the nature of the nature of the United States' claims and the facts set

5

forth in the pleadings, it appears that Defendants' equitable affirmative defenses are unlikely to succeed against the United States. Nevertheless, considering that motions to strike are "an extreme and disfavored measure," and because courts are divided on the availability of equitable defenses under similar circumstances, the Court finds that the motion to strike should be denied as to the Defendants' equitable defenses. While it may be difficult to successfully assert these defenses against the government, the undersigned cannot say at this stage of the proceedings that the defenses are conclusively prohibited as a matter of law. Additionally, although the United States' action is primarily one at law, it does seek the equitable remedy of piercing the corporate veil, and therefore it is appropriate to allow Defendants to pursue an equitable defense to a claim that, in part, seeks an equitable remedy. Accordingly, the Court will not strike Defendants' equitable defenses.[4]

The United States further argues that the heightened pleading standard of Fed. R. Civ. P. 9(b) applies to Defendants' affirmative defenses of unclean hands and estoppel, and that Defendants have not and cannot plead the necessary elements of those defenses. While several other district courts have used the heightened pleading standard in Rule 9(b) to evaluate affirmative defenses alleging mistake or fraud, including courts in this district, the Eighth Circuit has not conclusively determined this issue.[5] Moreover, Defendants did plead certain facts describing the bases for their defenses of unclean hands and estoppel, which if such facts are accepted as true, suggests some level of inequitable conduct (however thin), at least at this stage of the proceedings. Accordingly, the Court will not strike the defenses of unclean hands and estoppel pursuant to Fed. R. Civ. P. 9(b).

The Court will strike Defendants' third affirmative defense raising the statute of limitations. Chief Judge Smith Camp has conclusively determined that the FDCPA's six-year statute of limitations applies to all the United States' claims and that the claims were timely filed. (Filing No. 69 at p. 8). Although the Court agrees with Defendants that their statute of

---

[4] The United States' arguments may be better addressed in a motion for summary judgment before the district judge.

[5] See, e.g., *Strauss v. Centennial Precious Metals, Inc*., 291 F.R.D. 338, 341 (D. Neb. 2013)(Kopf, J.)(applying particularity requirement of Fed. R. Civ. P. 9(b) because "no one argue[d] that the particularity requirement of Fed. R. Civ. P. 9(b) does not apply to the pleading of affirmative defenses.").

limitations defense remains in the State's case, the statute of limitations defense was considered and dismissed in the United States' case as to all its claims. Subjecting the United States to discovery related to a defense that has already been dismissed would be redundant, prejudicial, and irrelevant to any remaining issues in the case.

In sum, Defendants' third defense raising the statute of limitations shall be stricken. The remainder of the United States' motion is denied as the undersigned cannot say that such defenses are legally insufficient as a matter of law on the instant motion to strike.

**II. Motions to Quash/for Protective Order**

Defendants issued Notices of Rule 30(b)(6) depositions to the United States and to the State of Nebraska requesting that both entities produce deponent(s) to testify regarding ten topic areas. (Filing No. 101-2; Filing No. 104-2). The United States and the State filed the instant motions seeking protective orders and orders quashing any deposition because the notices request disclosure of privileged information, the noticed topics are overly broad, burdensome, and irrelevant, and the information sought by Defendants is available by other means of discovery. (Filing No. 100; Filing No. 103).

Federal Rule of Civil Procedure 30(b)(6) provides that a party may name a governmental agency as a deponent in a notice or subpoena and "describe with reasonable particularity the matters for examination." Fed. R. Civ. P. 30(b)(6). The named organization must then designate one or more persons to testify on its behalf as to "information known or reasonably available to the organization." *Id.* "The testimony of a Rule 30(b)(6) witness represents the collective knowledge of the corporation, not of the specific individual deponents." *Waste Connections, Inc. v. Appleton Elec., LLC*, No. 8:12CV436, 2014 WL 1281918, at *3 (D. Neb. Mar. 27, 2014) (quoting *QBE Ins. Corp. v. Jorda Enter., Inc.*, 277 F.R.D. 676, 688 (S.D. Fla. 2012)). "The duty to prepare a Rule 30(b)(6) witness goes beyond matters personally known to the designee or to matters in which the designated witness was personally involved." *Id.*

First, the government plaintiffs suggest that Rule 30(b)(6) depositions are inappropriate and burdensome because other types of discovery are available to Defendants that provide answers to Defendants' non-privileged deposition topics. However, "Producing documents and responding to written discovery is not a substitute for providing a thoroughly educated Rule 30(b)(6) deponent." *Murphy v. Kmart Corp.*, 255 F.R.D. 497, 507 (D.S.D. 2009)(quoting *Great*

7

*American Ins. Co. of New York*, 251 F.R.D. at 541); see also *CitiMortgage, Inc. v. Chicago Bancorp, Inc.*, 2013 WL 3946116, at *2 (E.D. Mo. July 31, 2013)("Written discovery is not a substitute for a Rule 30(b)(6) deposition[.]); *U.S., ex rel. Fry v. Health All. of Greater Cincinnati*, No. 1:03-CV-167, 2009 WL 5227661, at *3 (S.D. Ohio Nov. 20, 2009)("Defendants are not precluded from conducting oral depositions merely because [the government] considers them less than the optimal means of securing information."). "A plaintiff should not be prevented from questioning a live witness in a deposition setting just because the topics proposed are similar to written requests for admissions already served. Such a result would essentially limit a plaintiff to the first form of discovery served, since topics are bound to overlap." *New Jersey v. Sprint Corp.*, No. 03-2071-JWL, 2010 WL 610671, at *2 (D. Kan. Feb. 19, 2010). Accordingly, the Court finds that the availability of written discovery does not excuse the plaintiffs from obligations under Rule 30(b)(6).

The government plaintiffs further suggest that, given the nature of their claims in this case (an action to recover a judgment brought by an enforcement agency), they are insulated from a Rule 30(b)(6) deposition. However, "Like any ordinary litigant, the Government must abide by the Federal Rules of Civil Procedure. It is not entitled to special consideration concerning the scope of discovery, especially when it voluntarily initiates an action." *S.E.C. v. Merkin*, 283 F.R.D. 689, 693-94 (S.D. Fla.), *objections overruled*, 283 F.R.D. 699 (S.D. Fla. 2012)(quoting *S.E.C. v. Collins & Aikman Corp.*, 256 F.R.D. 403, 414 (S.D.N.Y. 2009)). "Therefore, just like any party litigating in federal court," an opponent has the right to take a 30(b)(6) deposition of a governmental agency, "subject to privilege and work product claims available to all litigants as well as special privileges enjoyed by the Government." *Id.* at 694 (quoting *S.E.C. v. Kramer*, 778 F. Supp. 2d 1320, 1327 (M.D. Fla. 2011)). Moreover, "It is very unusual for a court to prohibit the taking of a deposition altogether and absent extraordinary circumstances, such an order would likely be in error." *Hawkins v. Cty. of Lincoln*, No. 7:10CV5001, 2012 WL 12884563, at *2-3 (D. Neb. Apr. 5, 2012)(Zwart, J.)(quoting *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979)).

The government plaintiffs next argue that, because attorneys are the only individuals with knowledge of the topic areas noticed by Defendants, the Rule 30(b)(6) notices to the governmental entities are the functional equivalent of a request to depose opposing counsel. Therefore, both plaintiffs argue that Defendants must meet the three-prong test of *Shelton v. Am.*

*Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986) to depose opposing counsel. The Court is not persuaded that Defendants' request to take Rule 30(b)(6) depositions are the functional equivalent of a request to depose opposing counsel. Although the plaintiffs assert that only attorneys have knowledge regarding the identified topics, "The duty to prepare a Rule 30(b)(6) witness goes beyond matters personally known to the designee or to matters in which the designated witness was personally involved." *Waste Connections*, No. 8:12CV436, 2014 WL 1281918 * 3. Even if attorneys are the only individuals with requisite knowledge, it does not necessarily follow that such knowledge is automatically protected by attorney-client privilege. "[T]he fact that government attorneys are the only individuals with the requisite knowledge to answer Defendants questions does not prevent them from preparing a designee to answer the questions." *U.S., ex rel. Fry v. Health All. of Greater Cincinnati*, No. 1:03-CV-167, 2009 WL 5227661, at *3 (S.D. Ohio Nov. 20, 2009). Finally, "[A] blanket claim of privilege in response to a Rule 30(b)(6) notice creates an unworkable circumstance in which a defendant loses a primary means of discovery without a meaningful review of his opponent's claim of privilege." *Merkin*, 283 F.R.D. at 694.

Having concluded that Defendants are not *per se* barred from taking Rule 30(b)(6) depositions of the plaintiffs, the Court next considers the scope of such depositions and whether a protective order limiting the scope of topics pursuant to Fed. R. Civ. P. 26(c) is appropriate. A court has discretion to limit discovery outside the scope permitted by Rule 26(b)(1). See *Roberts v. Shawnee Mission Ford, Inc.*, 352 F.3d 358, 361 (8th Cir. 2003). Under Rule 26(c), courts have broad discretion in deciding whether protection is warranted and in determining the type and terms of protection to be ordered.

The Notice of Rule 30(b)(6) deposition to the United States sets forth the following topics of inquiry:

(1) The factual basis for each cause of action.
(2) When, how, and under what circumstances the United States and/or any of its attorneys "learned of any actions by each of the Defendants which spurred the filing of the initial complaint in this matter," including knowledge regarding (a) the purchase of Stabl and Lant's assets, (b) the dissolution of Nebraska By-Products, Stabl, and Lant, (c) the transfer of any funds to any or all of the Defendants relating to the sale of such assets, and (d) issues regarding the statute of limitations for any or all of the causes of action set forth in the Complaint or Amended Complaint.
(3) When, how, and under what circumstances the EPA "and/or any of the attorneys representing it or the USA learned of any actions by each of the Defendants which

spurred the filing of the initial complaint in this matter," including knowledge regarding (a) the purchase of Stabl and Lant's assets, (b) the transfer of any funds to any or all of the Defendants relating to the sale of such assets, (c) issues regarding the statute of limitations for any or all of the causes of action set forth in the Complaint or Amended Complaint in this matter, and (d) the dissolution of Nebraska By-Products, Stabl, Inc., and Lant, Inc.

(4) Communications between the USA (including its attorneys in the United States Attorney's office) and the EPA, and/or with anyone else (specifically including representatives, employees, or agents of the State of Nebraska, the NDEQ and/or their attorneys or the attorneys for the Nebraska Attorney General's office), regarding (a) the running or expiration of statute of limitations for any causes of action involved in this case; and (b) execution on and collection of the January 2014 judgment(s) obtained by the United States and/or the State of Nebraska against Stabl, Inc.
(5) The decision (a) to file the Complaint in this matter and when to file that complaint; and (b) when to undertake any efforts to collect on the judgment in the underlying lawsuit entered in January 2014.
(6) The identities of all individuals employed by the United States who were involved in decisions to file the Complaint in this matter, including when to file such lawsuit.
(7) Communications, meetings, documents, and decisions with regard to filing of the Complaint in this matter, including timing thereof and any concern(s) regarding problems with the running or expiration of any statutes of limitations.
(8) Efforts undertaken to collect on the judgment obtained in the underlying lawsuit.
(9) Any documents (electronic or otherwise), video, audio files, photographs, and other media relating to this lawsuit.
(10) Policies, written, oral or procedural, regarding adherence to applicable statutes of limitations when enforcing judgments in favor of the United States of America.

(Filing No. 101-2). The Notice of Rule 30(b)(6) deposition to the State sets forth ten nearly identical topics to those in the Notice to the United States set forth above, except the State, its attorneys, and the NDEQ are substituted in place of the United States and EPA. (Filing No. 104-2). Both the United States and State argue that the above topics are either not relevant or are directed to privileged information concerning the discussion, deliberation, decision-making, and thought processes of governmental attorneys. The Court largely agrees.

The attorney-client privilege "protects confidential communications between a client and her attorney made for the purpose of facilitating the rendition of legal services to the client." *United States v. Yielding*, 657 F.3d 688, 707 (8th Cir. 2011). "The objectives of the attorney-client privilege apply to governmental clients. . . . Unless applicable law provides otherwise, the Government may invoke the attorney-client privilege in civil litigation to protect confidential communications between Government officials and Government attorneys." *United States v. Jicarilla Apache Nation*, 564 U.S. 162, 169-70 (2011)(internal citations omitted). However, the

attorney-client privilege "only protects disclosure of communications" and "does not protect disclosure of the underlying facts by those who communicated with the attorney[.]" *Upjohn Co. v. United States*, 449 U.S. 383, 395-96 (1981).

With respect to work product, "Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative[.]" Fed. R. Civ. P. 26(b)(3)(A). The court "must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B).

In this case, the majority of Defendants' noticed topics directly implicate the attorney-client and work-product privileges. For example, topic 5 requesting information regarding "the decision . . . to file the Complaint in this matter and when to file that complaint" is clearly work product, and topic 7 requesting "communications . . . and decisions with regard to filing of the Complaint in this matter" clearly implicate both attorney-client and work product privileges. Defendants request that the governmental plaintiffs produce a witness to testify as to how the government interpreted and applied the law and government policies, which necessarily includes the governmental plaintiffs' legal theories and positions. Defendants also ask the plaintiffs to disclose facts their attorneys believe apply to their position and how counsel intend apply those facts to support the plaintiffs' positions. "[D]epositions, including 30(b)(6) depositions, are designed to discover facts, not contentions or legal theories, which, to the extent discoverable at all prior to trial, must be discovered by other means." *U.S. ex rel. Baklid-Kunz v. Halifax Hosp. Med. Ctr.*, No. 6:09-CV-1002-ORL-31, 2012 WL 3537070, at *4 (M.D. Fla. Aug. 14, 2012)(citing *JPMorgan Chase Bank v. Liberty Mutual Ins. Co.*, 209 F.R.D. 361, 362 (S.D.N.Y. 2002)). Accordingly, the Court finds that a protective order limiting the scope of topics pursuant to Fed. R. Civ. P. 26(c) is appropriate.

Rather than attempt to re-draft all ten of the Defendants' topic areas, the Court will admonish Defendants to re-notice the depositions and limit their topics of inquiry to *factual* issues relevant to these cases. Defendants' affirmative defenses, generally speaking, pertain to the circumstances of the 2010 transactions, including whether the plaintiffs knew of and approved of such transactions. Defendants may probe the factual knowledge of the governmental plaintiffs regarding when they learned of the 2010 transactions and what they knew about it. Not all communications of the plaintiffs are categorically protected by attorney-client privilege, and

Defendants may inquire into such non-privileged communications. For example, because the attorney-client privilege protects "confidential communications between a client and her attorney made for the purpose of facilitating the rendition of legal services to the client," it may nevertheless be appropriate for Defendants to inquire into communications between the United States and the State (to the extent there is not a separate argument that the communications implicate work-product).

However, Defendants clearly cannot inquire into topics or conversations protected by attorney-client or work-product privileges. This includes, but is not limited to, inquiries into "communications . . . and decisions with regard to filing of the Complaint in this matter" and any other of the plaintiffs' internal decision-making process regarding why either plaintiff decided to commence litigation in this case or the underlying case, and any opinions, strategies, mental impressions, or evaluation of their cases regarding the same. With respect to the United States, Defendants may not inquire into *any* information relating to the statute of limitations, as such information is irrelevant to any issue in that case. Defendants may also not inquire into the State plaintiff's opinions or mental impressions regarding the statute of limitations. Defendants are entitled to inquire into the *facts* regarding when the State discovered, or facts pertaining to when the State reasonably could have discovered, the allegedly fraudulent transfers in this case, as that information is relevant to the State's allegation that it filed the action within one year after the transfers could reasonably have been discovered. Plaintiffs will remain free to object to any questions during the depositions, including objections on grounds of privilege. To the extent the parties request further assistance from the Court regarding the Rule 30(b)(6) depositions, they may request a telephone conference with the undersigned magistrate judge.

Accordingly,

**IT IS ORDERED:**

1. The State of Nebraska's Motion to Quash and Motion for Protective Order (Filing No. 88 in the Lead Case; Filing No. 96 in the Member Case) is granted, in part, and in part denied;

2. The United States' Motion to Quash and for Protective Order (Filing No. 89 in the Lead Case; Filing No. 97 in the Member Case) is granted, in part, and in part denied;

3. Defendants shall be permitted to re-notice Rule 30(b)(6) depositions of the plaintiffs but must limit its scope of deposition topics in accordance with the Court's direction above; and
4. The United States' Motion to Strike Affirmative Defenses ([Filing No. 98](Filing No. 98) in the Lead Case; Filing No. 104 in the Member Case) is granted, in part. Defendants' Third Affirmative Defense raising the statute of limitations is stricken in the Lead Case.

Dated this 8th day of August, 2018.

BY THE COURT:

s/ Michael D. Nelson
United States Magistrate Judge